[L. A. No. 26948. In Bank. Feb. 26, 1963.]

AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA et al., Petitioners, v. BOARD OF EDUCATION OF THE CITY OF LOS ANGELES, Respondent.

204

A. L. Wirin and Fred Okrand for Petitioners.

Harold W. Kennedy, County Counsel and Ronald L. Schneider, Deputy County Counsel, for Respondent.

PETERS, J.—Petitioners, a nonprofit corporation and its Executive Director, seek mandate to compel the respondent Board of Education to grant its application for a permit to use John Burroughs Junior High School Auditorium for a series of public bimonthly meetings on the subject of "The Bill of Rights." Respondent denied that application upon the sole ground that petitioners refused to file a statement of information as required by respondent's rule 1316. The sole question presented by this proceeding is whether respondent has the legal right to make compliance with that rule a prerequisite to an otherwise lawful use of the school premises.[1]

---

[1] Rule 1316 of the Los Angeles Board reads as follows:

"1316. Statement of Information. Each person or group requesting

The use for which the school premises is requested is admittedly a proper use, within the Civic Center Act (ch. 4, div. 12, Ed. Code), which makes school property available for any public use which does not interfere with the school program. Petitioners' request does not entail any such interference. Petitioners' refusal to comply with respondent's rule 1316 was based solely on principle, in that they believe the requirements thereof are unconstitutional. The parties hereto are the same as the parties in *American Civil Liberties Union* v. *Board of Education,* 55 Cal.2d 167 [10 Cal.Rptr. 647, 359 P.2d 45], filed January 24, 1961, in which this court reiterated the principle (previously stated in *Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536, 545-546 [171 P.2d 885]) that while "[t]he state is under no duty to make school buildings available for public meetings . . . [i]f it elects to do so . . . it cannot arbitrarily prevent any member of the public from holding such meetings . . . [n]or . . . make the privilege of holding them dependent on conditions that would deprive any members of the public of their constitutional rights." In that decision we also held that sections 16564 and 16565 of the Education Code (a portion of the Civic Center Act) were unconstitutional insofar as they required an applicant for use of school property to file a statement that the property would not be used "to further any program or movement the purpose of which is to accomplish the overthrow of the Government of the United States by force, violence or other unlawful means," and that the organization applying does not advocate such and is not a communist-action or communist-front organization.[2] The tenor of that opinion was that the statutory re-

the use of the premises for a Civic Center Activity shall, as a condition for the issuance of the permit, file the following statement:

" 'The undersigned states that, to the best of his knowledge, the school property for the use of which application is hereby made will not be used for the commission of any act which is prohibited by law, or for the commission of any crime including, but not limited to, the crime specified in Sections 11400 to 11401 of the California Penal Code. I certify (or declare) under penalty of perjury that the foregoing is true and correct.' "

[2]The Statement of Information required by section 16565 reads as follows:

"The undersigned states that, to the best of his knowledge, the school property for use of which application is hereby made will not be used for the commission of any act intended to further any program or movement the purpose of which is to accomplish the overthrow of the Government of the United States by force, violence or other unlawful means;

"That _____, the organization on whose behalf he is making application for use of school property, does not, to the best of

quirement was aimed not at the use to which the school property would be put, but was intended to bar certain organizations from use because of their political beliefs; in other words, that the statute ignored the fact that such an organization might desire to use the school property for perfectly legitimate purposes.

When that decision became final, the respondent board investigated the necessity and propriety of filling (by local rule) the gap left by this court's holding that section 16565 was unconstitutional. It noted that other sections of the Civic Center Act, which remained in effect, required it to take such steps as might be required to prevent improper use of school property, while still other sections granted it the power to make local rules and regulations for such purpose. It considered several proposed regulations, and finally adopted the rule here under scrutiny.

Thus the basic question is whether respondent's rule 1316 is in conflict with any provision of the state or federal Constitutions. The respective contentions of the parties in this regard are as follows:

1. Petitioners urge and respondent denies that the statement of information required by rule 1316 is an unconstitutional abridgement of petitioners' rights of free speech and assembly for the same reasons that this court held that the provisions of Education Code section 16565 are invalid;

2. Petitioners urge and respondent denies that such requirement subverts the presumption of innocence and inverts the burden of proof;

3. Petitioners urge and respondent denies that rule 1316 violates due process of law because it is too broad, and is arbitrary, unreasonable, and vague;

4. Petitioners urge and respondent denies that respondent was without power to enact rule 1316 because of state preemption of the field.

We find no merit in petitioners' contentions.

*Respondent's rule 1316 does not establish an unconstitutional abridgement of the rights of free speech and assembly:*

---

his knowledge, advocate the overthrow of the Government of the United States or of the State of California by force, violence, or other unlawful means, and that, to the best of his knowledge, it is not a communist-action organization or communist-front organization required by law to be registered with the Attorney General of the United States. This statement is made under the penalties of perjury.''

Since petitioners in this portion of their argument rely principally upon our previous decision in *American Civil Liberties Union* v. *Board of Education, supra,* 55 Cal.2d 167, the basic distinction between the statute there involved and rule 1316 should be noted. Section 16565 of the Education Code provided that an applicant could be denied the use of school property solely because of that applicant's political beliefs, and not because of the use to which it intended to put the premises. Respondent's rule 1316, on the other hand, requires no information regarding the applicant itself, but is restricted to a negative statement of the purpose for which it intends to use the building—that is, a statement that the property will not knowingly be used for the commission of any illegal act. The Education Code section was directed exclusively to communist activities, or activities ordinarily associated with communist organizations, whereas respondent's rule refers in general to "any act which is prohibited by law."[3] These distinctions not only provide the basis for determining that the latter does not abridge the rights of free speech and assembly, but are also germane to the other legal issues here presented. Thus, the claim that the rule subverts our former opinion is unsound.

In an attempt to sustain the claim that the requirements of the rule violate the constitutional guarantees of freedom of speech and assembly, petitioners next claim that the statement which an applicant must submit constitutes prior censorship and a prior restraint on free speech, and that such is not justified by any clear and present danger. In a very limited sense, the requirement that one state in advance that he will not knowingly commit an illegal act constitutes a prior restraint, but it is not censorship (unless self-censorship be included in the definition). The kind of censorship usually attacked is where the statute requires that spoken or written words, picture or performance, be submitted, before publication, to an authority which then makes a determination of whether the words or performance may be made public. Here there is no such requirement. The matter to be presented to the public is not disclosed in advance, and no authority is given the board to predetermine whether that matter is or is

[3]It is true that in addition to this general phrase, the rule requires a specific statement that the school premises will not be used for the acts denounced by sections 11400 and 11401 of the Penal Code. The effect of such additional language is discussed below.

not to be presented. The rule here under discussion requires only that the applicant censor itself; that is, that it submit in advance a statement that it does not knowingly intend to commit any criminal act on the school property. Therefore, the requirement of respondent's rule cannot be deemed to be the type of prior restraint ordinarily referred to as an unconstitutional limitation upon freedom of speech or assembly.

Moreover, not all prior restraints are, ipso facto, unconstitutional. In *Times Film Corp.* v. *Chicago,* 365 U.S. 43 [81 S.Ct. 391, 5 L.Ed.2d 403], the United States Supreme Court recently held that a Chicago ordinance requiring an exhibitor to submit all motion picture films to a governmental censor before receiving a permit for public display was a valid prior restraint which did not violate the constitutional guarantee of free speech. There, commencing at page 47, the court said: "It has never been held that liberty of speech is absolute. Nor has it been suggested that all previous restraints on speech are invalid. On the contrary, in *Near* v. *Minnesota* (1931) 283 U.S. 697, 715-716 [51 S.Ct. 625, 75 L.Ed. 1357], Chief Justice Hughes, in discussing the classic legal statements concerning the immunity of the press from censorship, observed that the principle forbidding previous restraint 'is stated too broadly, if every such restraint is deemed to be prohibited. . . . [T]he protection even as to previous restraint is not absolutely unlimited. But the limitation has been recognized only in exceptional cases.' These included, the Chief Justice found, utterances creating 'a hindrance' to the Government's war effort, and 'actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops.' In addition, the Court said that 'the primary requirements of decency may be enforced against obscene publications' and the 'security of the community life may be protected against incitements to acts of violence and the overthrow by force of orderly government.' " On page 49, the court added, "The phrase 'prior restraint' is not a self-wielding sword. Nor can it serve as a talismanic test. . . .

"Petitioner would have us hold that the public exhibition of motion pictures must be allowed under any circumstances. The State's sole remedy, it says, is the invocation of criminal process under the Illinois pornography statute . . . and then only after a transgression. But this position, as we have seen,

is founded upon the claim of absolute privilege against prior restraint under the First Amendment—a claim without sanction in our cases."[4]

 Thus, where the subject matter of the intended speech or assembly is such that it may properly be prohibited by law, and where there is an intention to assemble or speak under such circumstances as requires prior governmental license, the conditioning of such license upon a restraint against violating the law is not such prior restraint as is repugnant to the constitutional guarantees.[5]

There is a great difference between the exercise of those fundamental rights which do not require prior permit and those which, while they may not be denied arbitrarily, require permit or licensing by a public authority. It undoubtedly would be improper to refuse a permit to hold a parade in the public streets merely because the permitting authority is not in sympathy with the cause which applicant espouses. But it would be entirely reasonable to demand that such applicant agree, *in advance,* to comply with existing municipal ordinances, including (but not confined to) use of the streets during hours of heavy traffic, blockage of intersections beyond a specified time limit, inciting of riot, bearing loaded weapons, setting off of fireworks, etc. The licensing authority has both the right and the duty to place such reasonable restrictions on the freedom of assembly. Such restrictions or limitations would create no less a prior restraint than is to be found in respondent's rule 1316; and it would be neither more nor less of a restraint by reason of grouping all such limitations into one demand that the licensee obey all civic ordinances.

In striking down the state statutes which the respondent's instant order replaces, this court pointed out (*American Civil*

[4]Petitioners here also make the claim that the sole remedy against seditious use of the school property is to be found in the criminal statutes which may be resorted to after the fact. That contention appears to the disposed of by the United States Supreme Court.

[5]So stated, a rule authorizing prior restraint is not repugnant to the views of the dissenting minority in the *Times Film* case. Led by the Chief Justice, the minority were of the view that the majority opinion would result in unbridled censorship, which could destroy freedom of expression without the safeguards afforded by subsequent trial for illegal abuse of that freedom. The minority objected only to that form of censorship, and not to prior restraint, as such. Respondent's rule herein does not provide any possibility of such censorship, and thus meets the test laid down by both the majority and the minority in the *Times Film* opinions.

*Liberties Union* v. *Board of Education, supra,* 55 Cal.2d 167, at p. 178), the distinction between interfering with freedom of speech and thought for the direct purpose of prohibiting the same, and the tangential interference which results from another legitimate purpose. There, we said (p. 179), that the Legislature had attempted to set up a system of prior restraint based upon who the individual applicant was. We left open the question of the legitimacy of the legislative purpose had the restraint been confined solely to the use to which the school was to be put. In the instant case, respondent has simply conditioned its consent upon a statement that the applicant does not intend to put the property to an illegal use. That it has both the right and duty to predetermine that school premises will not be used in contravention of the law is to be found both in its general power to hold, maintain and use property for educational purpose (see *Payroll Guar. Assn.* v. *Board of Education,* 27 Cal.2d 197 [163 P.2d 433, 161 A.L.R. 1300]), and in the specific provisions of the Civic Center Act (Ed. Code, §§ 16551-16566). It is there provided that the public use of school property is made dependent upon prior permission of the local board, and each board is empowered and enjoined to make such regulations as will insure the proper administration and use of its property within the framework of the act.[6] To require an applicant to state that it does not knowingly intend to use the property in an illegal manner is a logical method of fulfilling that mandate. It follows that the prior restraint, if any, inherent in respondent's rule 1316 is not (in light of the *Times Film Corp.* decision) repugnant to any constitutional guarantee, and is not inimical to what we said in our opinion rendered in the previous action between these parties. For that reason it is unnecessary to discuss the question of clear and present danger, which the parties have argued at some length. It is also unnecessary to discuss other arguments made by the parties on the free speech issue. However, each of the parties has gone to such lengths in arguing the rules announced in *Barenblatt* v. *United States,* 360 U.S. 109 [79 S.Ct. 1081, 3 L.Ed.2d 1115], and *Konigsberg* v. *State Bar of California,* 366 U.S. 36 [81 S.Ct. 997, 6 L.Ed.2d 105] (and similar cases following the latter), that we should point out the inapplicability of those cases to

[6]A more detailed discussion of the respondent's power to legislate on the subject is included later in this opinion in the discussion of the issue of state preemption.

the instant problem. There can be no doubt that those authorities hold that where the matter under consideration is one in which the public has a peculiar concern (such as the right to practice law) the governing body may have the right to inquire, in advance of granting licenses, into the qualifications (including the beliefs) of the individual seeking the license. Respondent contends that those cases are controlling here, and petitioners reply that permission to use a public building does not entail such public concern. These arguments are not here relevant for the reason that the rule here involved does not require the applicant to disclose either its qualifications, its beliefs, or its past activities.

*Respondent's rule does not subvert the presumption of innocence, and does not invert the burden of proof*:

Petitioners' argument in this regard is not entirely clear. It is not clear whether they claim that respondent is engaged in an unconstitutional attempt to require applicants to prove their fitness to use school property, or claim that the rule is invalid because it presupposes that applicants may be guilty of an intention to commit crimes. In either event, they argue that the constitutionality of rule 1316 must be tested by respondent's motives in adopting the measure. In an effort to justify the claim that the purpose of the legislation (as distinct from its effect) is unconstitutional, they call attention to what is obviously intemperate language appearing as arguments in favor of proposed repressive legislation (principally, the arguments prepared by the proponents of the so-called "Francis Amendment"—which was proposition 24 submitted to and defeated by the voters of the state at the general election on November 6, 1962—and contained in the pamphlet distributed to registered voters by the Secretary of State). While such language may have disclosed the motivation of the proponents of that legislation, its appearance at or near the date on which respondent adopted rule 1316 does not connect it with respondent. It is irrelevant to the issue of respondent's motives in adopting its rule. More relevant are the minutes of the respondent board, contained in the record. Those minutes do show—and petitioners have made much of the fact— that some few of the members were anxious to institute a local rule which would have had the same purposes and effect as the statutes held to be unconstitutional by this court. But such board members were in the minority, and the rule they proposed failed to pass. The argu-

ments and the proceedings indicate that the majority of respondent board recognized the existence of a duty to make school property available to the public within the framework of the Civic Center Act, together with a duty to take such steps as might be necessary to insure proper use of the property. The local board has a clear duty in the latter respect. In proposing and securing adoption of rule 1316 the majority attempted to (and did) comply with those mandates. Whatever may have been the motives of the minority, they were unsuccessful, and respondent may not be judged by the actions or views of that minority.

The strongest evidence of the purpose of rule 1316 is to be found in the language used in the rule. Reduced to its essence, the single requirement of the rule is *that an applicant state that, to the best of his knowledge, the purpose for which it desires to use the school property is a legal one.* It seems clear that such a requirement is designed for the single purpose of determining in advance, so far as may be possible, that the school premises will not be used knowingly for illegal purposes.

Nor does rule 1316 subvert the presumption of innocence, or invert the burden of proof. As already pointed out, the rule does not require an applicant to divulge its political, sociological or economic beliefs. Neither does it require an applicant to set forth its general purposes, its associations, or anything about itself save and except the use to which it intends to put the school property—and even in that regard it makes no distinction between prospective uses so long as they are within the law. Certainly if the rule required an applicant to state that it would refrain from using the school premises to display lewd or obscene pictures for the purpose of attracting the prurient and lascivious, it could not be attacked as shifting the burden of proof, or of subverting the presumption of innocence. Likewise, it could not be so attacked if it required a statement that the premises would not be used for the purposes of inciting riot, serving alcoholic beverages to minors, setting off dangerous fireworks, or for any other of a limitless number of possible activities which are concededly inimical to public health and safety. Since any such requirement is limited to a future use of the property (as distinct from an inquiry into applicant's past conduct) it is unrelated to the question of guilt or innocence. It might touch tangentially upon burden of proof, since it requires an applicant

to furnish slight proof (consisting merely of its own statement) that it did not knowingly intend any of the enumerated illegal acts. But it would be deemed an acceptable limitation on the proposed use of public property because it would constitute a legitimate and reasonable exercise of police power. If such separate and piecemeal limitations upon illegal use of respondent's property be acceptable, there seems to be no reason why a single general limitation against all possible illegal use is not equally valid.[7] It would obviously be impracticable to expect respondent to set forth in its ordinance (or for applicant to be required to read and state that it would refrain from breach of) each specific illegal use that may exist. Therefore, the use of general phraseology seems preferable. In no other manner could the board obtain advance assurance from applicant that it intended to make a proper use of the property for which the board is responsible. The fact that an applicant is merely required to state that it does not knowingly intend to use the property for a future illegal use does not, of itself, constitute a presumption that applicant has done, or will do, anything wrong. It does not, therefore, subvert the presumption of innocence. If such statement be deemed to require the applicant to prove its fitness to use the property, we see nothing unconstitutional therein. Such is not a burden of proving innocence; it is a mere limitation on use. It is no more unwarranted than the burden created by the simple requirement that an applicant state the specific purpose for which it intends to use the property. Since petitioners' application as presented to respondent did contain the latter statement, we may assume that it concedes that respondent is entitled to know the use to which its property is to be put. And since a statement of a specific intended use does not negate other corollary uses, or illegal acts, we see no additional burden added by the simple requirement that applicant does not knowingly intend any illegal use.

---

[7]Since we are here discussing only the claim that respondent's rule subverts the presumption of innocence, we leave for subsequent discussion the contention that such general limitation is unconstitutionally vague and broad. However, in order to forestall any claim that we have overlooked the possibility that the rule might have been framed to elicit a direct statement of an applicant's intended use, we here note that such would not necessarily fulfill respondent's legitimate purpose herein. A statement of the principal purpose for which the premises are to be used does not necessarily negative the possibility of corollary (and illegal) purposes. Only by requiring a general denial of intent to use the property for an illegal purpose can the respondent protect itself—and the property—against such contingency.

█ Nor can we find—as petitioners contend—any unconstitutional limitation in the fact that the rule requires an applicant to make the statement therein set forth under penalty of perjury. The oath is but the vehicle by which information (constitutional or unconstitutional) is sought. It is the right to demand the particular information that is at issue, and not the form in which it is requested. Frequently an applicant for governmental benefits is required to give information under oath. This is so because the verified information is more apt to be complete and correct. If the information sought by respondent is unassailable, then the form in which it is required is of no moment.

To this argument petitioners reply that the requirement (that the statement be made under penalty of perjury) implies an improper intent to place an applicant in a position where it may be prosecuted for perjury should the school premises be ultimately used for an illegal purpose. It must be remembered, however, that to secure a conviction for breach of the ordinance it would not be sufficient to show that applicant should have known that some law would be violated during the period applicant was in possession of the premises. The rule requires scienter as an indispensable element. It calls for the information "to the best of . . . [applicant's] knowledge." To secure a conviction the prosecution would be required to prove that, at the time of signing and filing the statement, the applicant either knew that the school premises would be used, or intended to use them, for an illegal purpose. The requirement that an applicant make the preliminary denial of intent to commit crime upon the school property does not, in any real sense, require it to prove its innocence in any criminal proceeding which may thereafter arise. In such a proceeding *scienter* would be the necessary element. (See *American Communications Assn.* v. *Douds,* 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925].)

*Respondent's rule does not violate due process of law by reason of being too broad, vague, arbitrary or unreasonable:*

█ Petitioners contend that insofar as rule 1316 requires an applicant to state that the school property "will not be used for the commission of any act that is prohibited by law," it fails to meet the standards of legislative clarity. They also argue that since the applicant is required to state that he will not use the premises for the commission of any crime, it fol-

lows that "acts prohibited by law" must refer to something other than crime. While the enactment may be redundant, it is not vague. Acts prohibited by law and acts which constitute the commission of a crime may be one and the same thing, but the meaning of each phrase is clear. Each of the two phrases simply requires an applicant to assure the governing board that the school property will not knowingly be used for *any* purpose which is prohibited by law. The authorities on which petitioners rely, for the purpose of demonstrating vagueness, relate to situations where the penal statute, itself, failed to set forth an ascertainable standard of guilt. But respondent's rule 1316 does not purport to be a penal statute, nor does it attempt to define a crime, or to make any act whatsoever punishable by law. It is simply the enactment of a rule under which the governing board, in order to meet the duties imposed upon it by statute, can determine in advance that its property will be used in a lawful manner. By use of the challenged phrases it has simply incorporated the definitions of the various crimes already set forth in the prohibitory statutes enacted by a higher legislative authority. Its purpose is not to prohibit such act or acts, but to ascertain that the property for which it is responsible will not knowingly be used in any such manner. For complete definition of what is a crime or act prohibited by law, reference may be made to the individual statutes of prohibition. If any such individual statute is subject to the legitimate claim of vagueness, the specific act which that statute attempts to prohibit may not be punishable. But a simple reference to all such acts in a statute which is not criminal in nature, is not vague.

█ "Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language." (45 Cal. Jur.2d, Statutes, § 37, p. 561, and cases cited in fn. 20.) It will be upheld if its terms may be made reasonably certain by reference to other definable sources (*idem*). █ Here reference to the Penal Code supplies any allegedly missing definition of what is meant by "crime" or by "acts prohibited by law." Even in the case of a penal statute it has been held that the failure to define the word "crime" cannot be attacked as vague or indefinite for the reason that the meaning of such word may be discovered by reference to other code provisions (*People* v. *Wieler*, 55 Cal.App. 687, 690 [204 P. 410]).

Petitioners also urge that rule 1316 is arbitrary and too broad, inasmuch as it attempts to include the entire field of criminal law within its scope. As already pointed out, respondent has a statutory duty to prevent illegal use of its property. Thus the statute cannot be claimed to be arbitrary. If the applicant knowingly intends to use the premises for illegal purposes, the board is entitled to know this in advance, and to prevent, by denying a permit, the abuse of the privilege. (See *Times Film* decision, *supra*.) So interpreted the ordinance does not grant uncontrolled discretion to the board.

It is true, as petitioners contend, that enactments ''which are over-broad are unconstitutional'' (*Katzev* v. *County of Los Angeles*, 52 Cal.2d 360, 367-368 [341 P.2d 310]). It is also true that a statute which is overly broad in its terms or coverage amounts to denial of due process because it fails to provide a proper definition of the crime intended to be established. Such authorities are not here in point. Here the statute itself does not purport to define a crime, but simply seeks to ascertain that an applicant for the use of public property does not intend to use it for an illegal purpose. As pointed out above, the penal ramifications of this statute are potential, only, and can become actual only in conjunction with a charge of perjury, which is adequately defined in another statute. The requirement of the rule here involved is similar to that of many statutes requiring an applicant to give information in advance of receiving a particular privilege or benefit allowed by law to persons who qualify according to a factual standard set forth in the statute. In such situations the applicant is required to file a statement (usually under oath) setting forth those facts which bring him within the statute. Frequently such information is required to be given in the same general form as required herein.[8] Such requirements are not unconstitutional because the statute or rule containing the requirement is not penal in nature. Its purpose is simply to limit the granting of the benefits to those persons qualified under the respective statutes. The requirement that an applicant for the use of school property state that it

---

[8]For examples: Social Security regulations require recipients to state that they are not receiving more than a stated amount of earnings *from any source*; veterans' tax exemption statutes require a sworn statement that claimant does not *own any property* of a value beyond a stated amount; federal labor laws require officials of unions, which desire to qualify, to state that they are not members of *any organization* advocating subversive doctrines. There are many other examples.

will not knowingly use the premises for any illegal act is subject to the same interpretation.

The courts have been quite liberal in permitting general phraseology. In *American Communications Assn.* v. *Douds, supra,* 339 U.S. 382, the United States Supreme Court held that the phrase "illegal and unconstitutional methods" was sufficiently definite to withstand such an attack. That decision dealt with the requirement that union officials, seeking the benefits of federal labor laws for their unions, file a noncommunist affidavit. The high court not only held that the quoted language was sufficiently definite to withstand the test of due process, but it further stressed the fact that the only punishment specified in the statute was prescribed for statements made "knowingly and wilfully." Respondent's rule 1316 requires a statement in language similar to that approved in *American Communications,* and it likewise contains the saving clause that such statements be made only "to the best of . . . [declarant's] knowledge."

██ In the final analysis, the determination that a particular statute is or is not too broad in the constitutional sense turns not so much on its language as upon its effect. A statute may be phrased in words that are "broad," in that they convey general rather than specific concepts, and yet be the means of stating a regulation that is narrow and limited in its application. (See for example the two ordinances involved in *Saia* v. *New York,* 334 U.S. 558 [68 S.Ct. 1148, 92 L.Ed. 1574], and *Kovacs* v. *Cooper,* 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608].) ██ Such is respondent's rule. It is not phrased as a regulation, in that it does not enumerate specific acts which may or may not be performed on school property. It is cast in words of prohibition, in that it effectively prohibits the use of the property if the applicant intends to commit *any* crime on those premises. The fact that it embraces *any* illegal act does not make it too broad, in the constitutional sense. (See *Kovacs* v. *Cooper, supra.*)

██ Some mention is required of the fact that rule 1316, in addition to the requirement that the applicant state that the premises will not knowingly be used for an illegal purpose, also requires a denial of any intent to commit the crime specified in sections 11400 and 11401 of the Penal Code. Those sections prohibit and penalize advocacy of, or teaching, aiding or abetting criminal syndicalism (which is defined as any act intended to accomplish change in industrial own-

ership or government by means of unlawful force, violence or terrorism). Admittedly, the inclusion of the one specific in the otherwise general language of the statute is suspect, and petitioners make the most of it. To them it looks as if respondent intended only to prevent the use of its school buildings for the political crime defined in those two code sections. We cannot indulge in any such assumption. But, even if we do assume, *arguendo*, that such was the purpose of the board, that fact would not affect the propriety of the form in which the statute was enacted. The inclusion of the specific clause is relevant to a claim that rule 1316 is broad and arbitrary only if the specific statute thereby included is, of itself, broad or arbitrary. While it is true that certain attempted applications of the radical syndicalism act have been held to be unconstitutional (*Danskin* v. *San Diego Unified Sch. Dist., supra,* 28 Cal.2d 536), the act itself has been upheld against just such attacks (*In re McDermott,* 180 Cal. 783 [183 P. 437]; *In re Wood,* 194 Cal. 49 [227 P. 908]; *People* v. *McClennegen,* 195 Cal. 445 [234 P. 91]; *Whitney* v. *California,* 274 U.S. 357 [47 S.Ct. 641, 71 L.Ed. 1095]; and many others). Since the general statement that applicant will not commit any crime includes the specific crime defined by sections 11400 and 11401, the inclusion of the latter neither adds nor detracts from the former. The requirement that applicant deny an intent to commit radical syndicalism appears to have been entirely unnecessary, but it makes the respondent's ordinance neither more nor less broad or arbitrary.

*Respondent was not barred from further legislation in the field by reason of state preemption:*

Petitioners argue that the fact that the provisions of Education Code section 16565 have been held unconstitutional does not remove the state's occupation of the field. The full implication of such argument is that when the state completely occupies a certain field of legislation, and subsequently a portion thereof is stricken by judicial action, the latter action does not reinstate local power to legislate, since the state has expressed its intent to occupy the entire field.[9] The

---

[9]This entire issue of preemption is predicated upon the rule which holds section 11 of article XI of the state Constitution to be a limitation on, as well as a delegation of, local power to enact regulations within the police power. (See *In re Mingo,* 190 Cal. 769 [214 P. 850]; *Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515]; *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674 [3 Cal.Rptr. 158, 349 P.2d 974].)

basic premise of this argument is factually incorrect. Here, the state Legislature not only refrained from expressing an intent fully to occupy the field of regulation of the use of school properties, but it affirmatively empowered the respective school boards to take all necessary steps in providing such regulation. Education Code sections 16551, 16555, 16556, 16557, 16558, 16559, 16561, 16562 and 16563 (each of which is within and a part of the Civic Center Act) all contain provisions indicating such an intent. Some are merely permissive, in that they authorize, but do not require the local board to grant public use of property under certain conditions, thus leaving the board to make its own rulings thereon. Some authorize, but do not require, the board to make charges for the use of the property commensurate with the cost to the school district, thus leaving the board to make the necessary regulations in regard thereto. But of chief interest are the provisions of sections 16557 through 16559. Section 16557 provides, in part, that ''[t]he use of any public schoolhouse and grounds for any meeting is subject to such reasonable rules and regulations as the governing board of the district prescribes[,]'' 16558 declares that the management, direction and control of the civic center is vested in the board, and 16559 gives the board power to make all needful rules and regulations for conducting civic meetings in such property. The language of these sections, as well as the content of the entire chapter, clearly indicates a legislative intent to provide a state-wide method whereby school property may be made available to the public for certain specified purposes, and to leave the details thereof to further legislation by each local school board. Thus the Civic Center Act did not preempt the field.

A further indication that the state did not intend to preempt the field is to be found in the very sections (16564 and 16565) held by us to be unconstitutional in our prior opinion. The first of those two sections provided that school property shall not be used to further any program intended to accomplish the overthrow of government by force or violence, and makes such use a misdemeanor. The second provided a statement to be filed with the school board by the applicant, for the purpose of ascertaining that no such illegal use would be made of the property. In addition, that section provided that ''[t]he school board may require the furnishing of such additional information as it deems necessary to make the determination that the use of the school property'' would

not violate the provisions of section 16564. That authorized the local authorities to legislate beyond and in addition to the provisions enacted by the state Legislature. The fact that a portion of the state enactment was found to be unconstitutional on other grounds does not eliminate such clear statement of legislative intent. *Tolman* v. *Underhill,* 39 Cal.2d 708 [249 P.2d 280], on which petitioners rely (and which struck down as invalid by reason of state preemption a loyalty oath which the Regents of the University of California sought to impose on its faculty) is not controlling for the reason that there the state Legislature had covered the field of employee loyalty oaths without expressly reserving a further right to local public employers. Petitioners' further citations are not in point, in that they pertain to fields of legislation which, by their peculiar nature, require a single statewide system. Such is not true of the regulation of use of school property which, under the existing state statute, may be made available to the public on such terms as the local boards shall determine.

Rule 1316 of the respondent board is not invalid for any of the reasons suggested by petitioners. The alternative writ of mandate heretofore issued should be discharged and a peremptory writ denied. It is so ordered.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.