[Civ. No. 35086. Second Dist., Div. Three. July 22, 1970.]

In re BABY BOY T., a Minor.
DEPARTMENT OF ADOPTIONS OF COUNTY OF LOS ANGELES,
Petitioner and Respondent, v.
E. T., a Minor, Objector and Appellant.

COUNSEL

Ritchel & Nagin and Lawrence M. Nagin for Objector and Appellant.

John D. Maharg, County Counsel, and Louis B. Hays, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**FORD, P. J.**—The question to be resolved on this appeal is the constitutionality of subdivision (g) of section 232 of the Civil Code. That subdivision was added to section 232 in 1967. The pertinent portions of the section are as follows: "An action may be brought for the purpose of having any person under the age of 21 years declared free from the custody and control of either or both of his parents when such person comes within any

of the following descriptions: . . . (g) Whose parent or parents are, and will remain incapable of supporting or controlling the child in a proper manner because of mental deficiency or mental illness, if there is testimony to this effect from two medical examiners certified under Section 5000 of the Welfare and Institutions Code. The parent or parents shall be cited to be present at the hearing, and if he or they have no attorney, the judge shall appoint an attorney or attorneys to represent the parent or parents and fix the compensation to be paid by the county for such services, if he determines the parent or parents are not financially able to employ counsel."

The basis of the challenge as to constitutionality is stated on behalf of the appellant mother as follows: "Nothing in the language of the section, or in any other source, succinctly informs the appellant of what 'proper manner,' 'mental deficiency' or 'mental illness' means." Except for the contention that the statutory provision is unconstitutionally vague, no claim of error in the proceedings is made.

The record discloses that the petition to have the child declared free from the custody and control of his mother was filed on behalf of the Department of Adoptions of the County of Los Angeles. Two medical examiners certified under section 5000 of the Welfare and Institutions Code were appointed. When the matter came before the court on December 10, 1968, the mother was 19 years old and was living with her parents. The court stated that counsel would be appointed to represent the mother and the matter was continued to January 21, 1969. Counsel was appointed and appeared on behalf of the mother on January 21, 1969. Two additional medical examiners were appointed at the request of the mother's counsel and the matter was continued to March 4, 1969. On the latter date, pursuant to stipulation, the reports of the four medical examiners were received in evidence. Mrs. Waldbaum, an employee of the Department of Adoptions, testified. The constitutional question presented on this appeal was raised at the hearing. The petition was granted.

The superior court file has been transmitted to this court at its request. (Rule 12(a), Cal. Rules of Court.) The record shows that the identity of the father of the baby is unknown and it indicates that the pregnancy of the mother was caused by an act of rape.

Before reaching the legal question presented, reference will be made to the findings of fact of the trial court. Those findings were as follows: 1. The minor is a male child born January 5, 1967, in Los Angeles County. 2. The minor child has been in the custody of the County of Los Angeles since January 12, 1967, continuously to the time of the hearing of the petition herein. 3. Due to mental deficiency the citee mother is a parent who is and will remain incapable of supporting or controlling the child in a proper

manner. 4. Four medical examiners, certified under section 5000 of the Welfare and Institutions Code, testified that the mother would remain incapable of caring for or controlling the child in a proper manner because of her mental deficiency; such testimony was uncontradicted. 5. It is in the best interests and welfare of the child that he be freed from the custody and control of his mother.

On the subject of unconstitutional vagueness the Supreme Court stated in *American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, at page 218 [28 Cal.Rptr. 700, 379 P.2d 4]: " 'Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' (45 Cal. Jur.2d, Statutes, § 37, p. 561, and cases cited in fn. 20.) It will be upheld if its terms may be made reasonably certain by reference to other definable sources (*idem*)." (See *People* v. *Victor,* 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].)

Since in the instant case the trial court found that the mother, due to "mental deficiency," is a parent who is and who will remain incapable of supporting or controlling the child in a "proper manner," a logical approach to the question presented is to determine first whether the reference to "a proper manner" with respect to the matter of support has the requisite constitutional certainty.

Guidance as to statutory construction is found in the reasoning of *People* v. *Vassar,* 207 Cal.App.2d 318, at pages 322-323 [24 Cal.Rptr. 481]: "Defendant's counsel contends that Health and Safety Code, section 11502, is unconstitutional, in that it is vague in failing to define who constitutes a minor within the meaning of that section. (Citing such authority as *In re Peppers,* 189 Cal. 682 [209 P. 896]; *Lanzetta* v. *State of New Jersey,* 306 U.S. 451 [83 L.Ed. 888, 59 S.Ct. 618].) We see no merit to this contention. The argument is that Civil Code, section 25, cannot be considered in connection with section 11502 of the Health and Safety Code in determining who is a minor. It is a well-recognized rule that for purposes of statutory construction, the codes are to be regarded as blending into each other and constituting but a single statute. [Citations.] Although section 11502, *supra,* does not in itself define a minor, section 25 of the Civil Code does. . . . [¶] There is no qualifying language in section 25 which limits the use of this definition of the Civil Code or any part thereof. In construing a particular provision of any of the codes, reference can well be made to any of the other codes for clarification. (*In re Porterfield, supra,* 28 Cal.2d 91, 100 [168 P.2d 706, 167 A.L.R. 675].) In *Smith* v. *Superior Court,* 187 Cal.App.2d 609 [10 Cal.Rptr. 1], the court had to determine the meaning of 'minor' as used in Business and Professions Code, section 4234. It looked to section 25 of the

Civil Code and integrated the definition of 'minor' therein contained into section 4234 of the Business and Professions Code. Although Health and Safety Code, section 11502, does not define the term 'minor' within the meaning of that section, it is not unconstitutionally vague. Reference to Civil Code, section 25, may be used to determine with certainty the scope of the class of persons delineated as 'minors.' Section 11502 does not abrogate the due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States, as claimed."

Since a time preceding the addition of subdivision (g) to section 232 of the Civil Code, section 270 of the Penal Code has embodied a statement as to the nature of the duty of a parent with respect to the support of a child. That duty is "to furnish necessary clothing, food, shelter or medical attention or other remedial care for his child." In the light of the duty so defined, subdivision (g) of section 232 of the Civil Code is reasonably certain in its use of the term "proper manner" with respect to the support of a child.

Moreover, since a time prior to the enactment of subdivision (g) of section 232 of the Penal Code, section 600 of the Welfare and Institutions Code has provided for the jurisdiction of the juvenile court over a minor who has no parent or guardian capable of exercising effective parental care or control. In *Marr* v. *Superior Court,* 114 Cal.App.2d 527, at page 530 [250 P.2d 739], the court stated: "Parental control means such control as parents ordinarily exercise and the phrase carries with it the implication of the purpose of parental control over such an infant, that is, its proper care and support, the usual incidents of the exercise of control over it."

■  Apropos is the reasoning of *Gleason* v. *City of Santa Monica,* 207 Cal.App.2d 458, at page 461 [24 Cal.Rptr. 656]: " 'The fundamental rule of statutory construction is that the court should ascertain the intention of the Legislature so as to effectuate the purpose of the law. [Citations.]' *(Select Base Materials* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].)  ■  [¶] While the interpretation of similar words in other statutes is not controlling, such interpretation is helpful in arriving at the legislative intent. [Citations.] . . . [¶]  ■  'Moreover, "every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." [Citation.]' *(Select Base Materials* v. *Board of Equalization, supra,* 51 Cal.2d 640, 645.)"

■  In the instant case the court found that the mother's permanent lack of capacity to support or control the child was due to "mental deficiency." As has been noted, subdivision (g) provides for testimony upon that issue from two medical examiners certified under section 5000 of the Welfare and Institutions Code. It is obvious that that reference is to section 5000 as it existed at the time of the enactment of subdivision (g) of section

232 of the Civil Code in 1967. (See present § 6750 of the Welf. & Inst. Code which became operative as of July 1, 1969.) In the light of that fact and in view of the governing law as to statutory construction hereinabove stated, it is manifest that the legislative intent in using the term "mental deficiency" was to embody the concept then set forth in section 5590 of the Welfare and Institutions Code,[1] the first paragraph of which was as follows: "As used in this code, 'mentally deficient persons' mean those persons, not psychotic, who are so mentally retarded from infancy or before reaching maturity that they are incapable of managing themselves and their affairs independently, with ordinary prudence, or of being taught to do so, and who require supervision, control, and care, for their own welfare, or for the welfare of others, or for the welfare of the community." (See present § 6500 of the Welf. & Inst. Code, which became operative as of July 1, 1969.) There is no reasonable basis for the contention that subdivision (g) of section 232 is vague and uncertain because of the use of the term "mental deficiency." (See *In re Cavanaugh,* 234 Cal.App.2d 316, 322 [44 Cal.Rptr. 422], followed in *In re J. F.,* 268 Cal.App.2d 761, 773 [74 Cal. Rptr. 464].)

The findings of fact make no reference to "mental illness." But, without repeating the reasoning hereinabove set forth, it is manifest that in enacting subdivision (g) of section 232 of the Civil Code it was the legislative intent to embody the concept then set forth in section 5550 of the Welfare and Institutions Code, a portion of that section then being as follows: " 'Mentally ill persons,' as used in this code, means persons who come within either or both of the following descriptions: (a) Who are of such mental condition that they are in need of supervision, treatment, care or restraint. (b) Who are of such mental condition that they are dangerous to themselves or to the person or property of others, and are in need of supervision, treatment, care or restraint." Such provision as to "mental illness" presents no problem of vagueness or uncertainty. (See *In re Booth,* 212 Cal.App.2d 234, 235 [27 Cal.Rptr. 838].)

If subsequent amendments of the Welfare and Institutions Code have made it advisable that some changes be made in the language of subdivision (g) of section 232 of the Civil Code, that is a problem for the Legislature.[2]

---

[1]In *People* ex rel. *Thain* v. *City of Palo Alto,* 273 Cal.App.2d 400, at page 406 [78 Cal.Rptr. 240], the court stated: "It will be assumed that the Legislature, in enacting a statute, has in mind existing related laws [citations], including, of course, the acts of previous Legislatures. [Citation.]"

[2]The Legislature at its 1970 regular session has amended subdivision (g) of section 232 of the Civil Code by substituting section "6750" for section "5000" with respect to certified medical examiners.

But, for the reasons stated hereinabove, the appellant's contention as to the unconstitutionality of subdivision (g) of section 232 of the Civil Code is untenable.

While it is a grave matter to declare a child free from the custody and control of a parent, the present case presented a factual situation where the court below had no other reasonable means available by which to serve and protect the interests and welfare of the child.

The order and judgment declaring the minor person free from the custody and control of his mother is affirmed.

Schweitzer, J., and Allport, J., concurred.