[No. B168056. Second Dist., Div. Eight. May 17, 2004.]

VALLEY VISTA SERVICES, INC., Plaintiff and Appellant, v.
CITY OF MONTEREY PARK et al., Defendants and Respondents.

882

884

COUNSEL

Law Offices of Michael B. Montgomery, Michael B. Montgomery and Charles R. Martin for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Robert E. Palmer, Christopher L. Pitet, Joshua A. Jessen; Brown, Winfield & Canzoneri, Mark W. Steres and Jennifer A. Vargas for Defendants and Respondents.

OPINION

RUBIN, J.—

## INTRODUCTION

Under the California Integrated Waste Management Act of 1989 (Pub. Res. Code, § 40000, et seq.), local agencies are allowed to grant exclusive operating rights to solid waste disposal companies. (Pub. Res. Code, § 40059, subd. (a)(1).)[1] If other disposal companies have been authorized by the agency to operate within the municipality's boundaries for more than three years, the agency may notify them that as a result of the exclusive franchise, their operating rights will expire within five years. (§ 49520.)[2] At issue here is whether a city ordinance which prevents a waste disposal company that has received the five-year termination notice from soliciting new business during that five-year period conflicts with the Act. We conclude it does not.

## FACTS AND PROCEDURAL HISTORY

The Act requires local agencies to divert from landfills half of the trash they produce, either by recycling or other means. By early 2002, the City

---

[1] We will sometimes refer to this as "the Act" or the "Waste Management Act." All further undesignated section references are to the Public Resources Code.

[2] The statutory scheme is slightly different depending on whether the previous hauler had an exclusive arrangement with the local agency. (§ 49520.)

of Monterey Park (the city) had not complied with those requirements and faced the prospect of a compliance order and daily $10,000 fines. In order to meet its obligations under the Act, the city decided to grant an exclusive franchise for residential, commercial and industrial waste disposal services to Athens Services (Athens). Athens already had an exclusive franchise over residential waste disposal within the city and handled roughly 99 percent of all waste disposal accounts. The new 15-year exclusive contract offered several advantages, including use of a materials recovery facility, automated collection containers, higher customer service standards, and a reduced number of trash collection vehicles.

On May 23, 2002, the city notified Valley Vista that it was planning to award an exclusive waste disposal franchise.[3] At that time, Valley Vista serviced just 15 commercial waste disposal accounts. Valley Vista was notified that it could continue to operate under section 49520 for up to another five years, but only as to its then-current accounts. Valley Vista ignored that directive and added several new customers. After being warned by the city, Valley Vista's lawyer challenged the new business restriction, contending that because section 49520 said nothing about taking on new accounts, Valley Vista was allowed to do so during the five-year termination period. In response, the city amended its waste disposal ordinance to state that waste disposal companies which received the May 23 termination notice were limited to servicing their then-existing accounts.

After the ordinance was amended, Valley Vista sued the city, filing a mandate petition, which alleged that the state had preempted any local waste disposal ordinances, making the amendment unconstitutional. Valley Vista's petition also named Athens as a real party in interest. After a bench trial, based on the parties' briefs and exhibits, the court denied the petition, finding that the city's amended ordinance was not preempted by, and did not conflict with, state law. Valley Vista appeals.

## STANDARD OF REVIEW

Because the issues raised on appeal call for the interpretation of statutes and ordinances, we exercise our independent review. (*Big Creek Lumber Co. v. County of Santa Cruz* (2004) 115 Cal.App.4th 952, 966 [10 Cal.Rptr.3d 356] (*Big Creek Lumber*).)

---

[3] Athens was awarded its franchise on June 19, 2002. In its reply brief, Valley Vista contends for the first time that the timing of the city's notification was defective because it preceded the award of Athens's exclusive franchise. We deem the issue waived because it was not raised below (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28 [21 Cal.Rptr.2d 104]) and because it was first raised in Valley Vista's reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770].)

## DISCUSSION

1. *The Act Is Silent About Soliciting New Customers During The Phase-out Period*

By 1988, landfills throughout the state were nearly filled, and we were figuratively awash in our own trash. To meet this crisis, the Legislature passed the Waste Management Act. Its goals were to reduce, recycle and reuse solid waste to the extent possible. Local agencies such as cities which were responsible for waste disposal within their boundaries were obliged to enact comprehensive waste management plans that would eventually divert half of their trash from landfills. (*City of Alhambra v. P.J.B. Disposal Co.* (1998) 61 Cal.App.4th 136, 138 [71 Cal.Rptr.2d 364] (*City of Alhambra*).) The Act is designed to protect the environment, improve regulation of existing landfills, ensure that new landfills are environmentally sound, improve permitting procedures for solid waste management facilities, and specify the responsibilities of local governments to develop and implement integrated waste management plans. (*Ibid.*)

The Act gives local agencies discretion to grant exclusive waste disposal franchises. (§ 40059, subd. (a)(2).) Section 49520 provides: "If a local agency has authorized, by franchise, contract, license, or permit, a solid waste enterprise to provide solid waste handling services and those services have been lawfully provided for more than three previous years, the solid waste enterprise *may continue to provide those services* up to five years after mailed notification . . . by the local agency having jurisdiction that exclusive solid waste handling services are to be provided or authorized, unless the solid waste enterprise has an exclusive franchise or contract. [¶] If the solid waste enterprise has an exclusive franchise or contract, the solid waste enterprise shall continue to provide those services and shall be limited to the unexpired term of the contract or franchise or five years, whichever is less." (Italics added.)[4]

As Valley Vista points out, section 49520 does not state that a trash hauler which receives a termination notice may not solicit new business during the allowed termination period. According to Valley Vista, its right to do so is implicit in the Legislature's statement that it "may continue to provide those [waste disposal] services" during that time. Valley Vista contends the city's amended ordinance restricting its right to seek new customers conflicts with

---

[4] We will sometimes use the phrase "trash hauler" when referring to solid waste disposal companies. When we refer to exclusive "franchises" under section 49520, we also include contracts. We also wish to make clear that our holding concerns the section 49520 rights of only those trash haulers, like Valley Vista, that have operated under nonexclusive franchises or that do not possess the preexisting right to service a particular route.

section 49520. (See Cal. Const., art. XI, § 7 [cities may make and enforce all local police, sanitary, and other ordinances that do not conflict with general laws].) In short, Valley Vista contends that because it was lawfully entitled to augment its customer base as part of providing services before receiving the statutory phase-out notice, section 40059, subdivision (a)(2) grants it the right to keep doing so during the phase-out period.

The problem with that argument is that it has no support in either the legislative history or the plain meaning of the statute. The term "those services" is equally susceptible of meaning the serving of those clients the hauler had as of the notification date. Valley Vista argues that if that is what the Legislature meant, it would have used the phrase "continue to serve existing accounts." The easy rejoinder to that contention, however, is that the Legislature could equally have said "provide or expand such service," or "nothing contained herein shall restrict a waste hauler's right to expand its business during the phase out period." We therefore agree with Judge Yaffe, who in denying the mandate petition in the trial court, wrote that the Act "is silent as to whether or not the nonexclusive haulers can solicit or accept new business during the five year period."

## 2. *The Ordinance Does Not Conflict With State Law*

■ Even though the Act is silent on the solicitation of new business, the city's ordinance might be unlawful if it conflicts with state law. A local ordinance conflicts with state law if it enters an area that has been preempted by state law, or if it otherwise duplicates or contradicts the general law. (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534] (*Sherwin-Williams.*)

■ Preemption may be express or implied. Express preemption requires an express statement by the Legislature that it intends a state law to fully occupy the area. (*Big Creek Lumber, supra,* 115 Cal.App.4th at p. 983.) Implied preemption may take many forms, but it cannot exist if the Legislature has expressed its intent to permit local regulations or where the statutory scheme recognizes local regulations. (*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150].)
■ The Waste Management Act does not include an express preemption clause. On the contrary, it specifically allows for continued local waste disposal regulations, vesting local agencies with considerable discretion in that area. (§§ 40001, subd. (a) [state and local agencies share responsibility for waste disposal], 40059, subd. (a)(1), (2) [local agencies may determine aspects of solid waste handling of local concern, including but not limited to the nature, location, and extent of providing disposal services and whether the services shall be provided by exclusive contract], 40703 [local government

responsibilities are integral to the successful implementation of the Act].) Given these provisions and the fact that local agencies through their traditional police power have played the dominant role in local sanitation matters, the Act does not impliedly preempt the field of waste disposal. (*Waste Resource Technologies v. Department of Public Health* (1994) 23 Cal.App.4th 299, 305–309 [28 Cal.Rptr.2d 422].)

■ That leaves duplication and contradiction of state law as the only remaining bases for determining whether the city's ordinance conflicts with the Waste Management Act. An ordinance that is coextensive with a state law is duplicative. (*Sherwin-Williams, supra,* 4 Cal.4th at p. 897, citing *In re Portnoy* (1942) 21 Cal.2d 237, 240 [131 P.2d 1] [local legislation was duplicative where it tried to impose the same criminal prohibition that general law imposed].) ■ Because, as we have explained above, the Act in general and section 49520 in particular are silent on a trash hauler's right to solicit new business during the section 49520 phase-out period, the city's amended ordinance does not, by definition, duplicate the general law.

■ Local laws contradict state laws if they "prohibit what the statute commands or command what it prohibits." (*Sherwin-Williams, supra,* 4 Cal.4th at p. 902.) A contradiction is generally found only when the state and local acts " 'are irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " (*Big Creek Lumber, supra,* 115 Cal.App.4th at pp. 989–990.) Determining whether a contradiction exists requires us to interpret both the ordinance and the statute. (See *id.* at pp. 985–992 [examining the relevant laws measure by measure to determine their meaning]; *Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1259–1266 [2 Cal.Rptr.3d 739] [examining terms of the various measures, then applying rules of statutory construction to determine whether a conflict exists].)

■ The fundamental rule of statutory construction is to ascertain the intent of the legislative body in order to effectuate the purpose of the law. In doing so, we first look to the words of the enactment and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. The statute must be given a reasonable and common sense interpretation consistent with the legislative body's apparent purpose and intention. The interpretation should be practical, not technical, and should result in wise policy rather than mischief or absurdity. If the language of a statute is clear, we

should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history. (*Kotler v. Alma Lodge* (1998) 63 Cal.App.4th 1381, 1390–1391 [74 Cal.Rptr.2d 721].) Statutes should be interpreted with reference to the whole system of law of which they are a part (*People v. Comingore* (1977) 20 Cal.3d 142, 146–147 [141 Cal.Rptr. 542, 570 P.2d 723]), and sections relating to the same subject must be read together and harmonized (*Kotler v. Alma Lodge, supra,* at p. 1394). When construing a statute, we may consider its legislative history, including committee and bill reports, and other legislative records. (*In re John S.* (2001) 88 Cal.App.4th 1140, 1142, fn. 2 [106 Cal.Rptr.2d 476].) These rules also apply when interpreting local ordinances. (*Big Creek Lumber, supra,* 115 Cal.App.4th at p. 967.)

The predecessor to section 49520 was the virtually identical former Health and Safety Code section 4272 (section 4272), which was repealed when the Waste Management Act was enacted. (*City of Alhambra, supra,* 61 Cal.App.4th at pp. 143–144, and fn. 9.) Its purpose was to provide trash haulers who were supplanted by a competitor's exclusive franchise time to amortize their capital investments in the locales where they had been providing disposal services. (*Id.* at pp. 146–147; *City of Santa Rosa v. Industrial Waste & Debris Box Rentals, Inc.* (1985) 168 Cal.App.3d 1132, 1136 [214 Cal.Rptr. 737] (*City of Santa Rosa*).) The phase-out period for trash haulers with existing exclusive franchises was (and still is) limited to the lesser of five years or the termination date of their franchise because they are assumed to have anticipated and planned for their amortization needs when they first entered their franchises. Trash haulers with nonexclusive arrangements needed the guaranteed five-year period because their "existence is more precarious. In order to encourage such companies to capitalize sufficiently, the Legislature granted them this five-year right. *Of course, competition could put these companies out of business at any time,* but trash collection service would still be available and that is all that the public interest demands." (*City of Santa Rosa,* at p. 1136, italics added.)[5]

As the italicized language from *City of Santa Rosa* suggests, section 4272 did not come with a guarantee of full amortization. While this carries some

---

[5] The *City of Santa Rosa* and *City of Alhambra* courts held that the purpose behind sections 49520 and 4272 was to protect the availability of waste disposal services in general, with a particular trash hauler protected only when necessary to achieve that goal. (*City of Alhambra, supra,* 61 Cal.App.4th at p. 146; *City of Santa Rosa, supra,* 168 Cal.App.3d at p. 1136.) We do not believe this means that a trash hauler is not entitled to the statute's phase-out period even though other trash haulers are available to take over its customers.

weight in our analysis, we do not believe the answer lies in the legislative intent behind section 49520's predecessor. Whatever its original intent, the statute also obtained a new one when it became part of the Waste Management Act, and section 49520 must therefore be interpreted in light of that legislative scheme. (*People v. Comingore, supra,* 20 Cal.3d at pp. 146–147.)

As noted earlier, the Act requires local agencies to divert half of their trash from landfills through integrated waste management plans that rely on recycling and other means. Regulation of trash haulers has traditionally been left to local agencies and, even though the Act envisions a state-local agency partnership, the Act leaves local agencies with most of the authority and discretion when deciding how to comply with its terms. (§ 40059; *Waste Resource Technologies v. Dept. of Public Health, supra,* 23 Cal.App.4th at pp. 306–307.) This includes the right to determine all "[a]spects of solid waste handling which are of *local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services."* (§ 40059, subd. (a)(1), italics added.) It also includes the right to determine whether services are provided by means of exclusive or nonexclusive franchise or contract, with or without competitive bidding. (§ 40059, subd. (b)(1).)

When amending section 49520 in 1998, a legislative committee commented on this power.[6] A bill analysis noted that the Legislature allowed local agencies to accomplish the Act's waste diversion goals by awarding exclusive franchises. "With this authority, the local agencies can choose those companies that have the means and have made the commitment to divert waste from the landfill, helping the local agencies meet the diversion requirement." (Natural Resources Com., Assem. Republican Bill Analysis of Sen. Bill No. 2241 (1997–1998 Reg. Sess.).) Implicit in this, we believe, is the notion that a trash hauler awarded an exclusive franchise under the Act will commit a large portion of its resources to fulfilling its obligations. For instance, as city staff reports in this case show, Athens agreed to many service upgrades, including use of a materials recovery facility, automated collection containers, and higher customer service standards. Athens' sales and marketing director stated in a declaration that Valley Vista was actively competing with Athens, had approached many of Athens's customers, told them of the pending legal actions, and claimed Valley Vista would soon be able to take on many new accounts. Allowing Valley Vista to compete with Athens and peck away at its

---

[6] The amendment, Statutes 1998, chapter 811, was designed to overturn part of the holding in *City of Alhambra,* which limited the five-year phase-out period to trash haulers who held trash disposal permits or licenses, not to those operating under a general business license. (*City of Alhambra, supra,* 61 Cal.App.4th at p. 146.) The Legislature amended section 49520 to state that it applied to trash haulers who had "lawfully" provided those services for the previous three years.

newly awarded customer base could undermine Athens's ability to recoup its costs and could discourage other disposal companies from seeking exclusive franchises.[7]

Also implicit in this analysis, and the Act itself, is the notion that a local agency may determine that it can best comply with the Act by choosing the one waste disposal company with the means and commitment to carry out its integrated disposal plan. Valley Vista does not contend that its collection methods complied with the Act's landfill diversion goals. Allowing trash haulers who do not conform to the city's new disposal system to expand their operations during the phase-out period could undermine the city's ability to comply with the Act, and therefore the Act itself.

In short, restricting trash haulers with nonexclusive franchises to their existing accounts during the section 49520 phase-out period is not inimical to the Waste Management Act. It does not "prohibit what the statute commands or command what it prohibits" (*Sherwin-Williams, supra,* 4 Cal.4th at p. 902), and is not " 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " (*Big Creek Lumber, supra,* 115 Cal.App.4th at pp. 989–990.)

Because the ordinance neither duplicates, contradicts nor is preempted by the Act, Valley Vista's constitutional challenge fails.[8]

---

[7] During oral argument, counsel for Valley Vista asked us to consider as part of our analysis a local newspaper article contained within the legislative history of the 1998 amendment to section 49520, which supposedly mentioned an instance where a city complained that during a trash hauler's phase-out period, it began competing with the new holder of an exclusive franchise. We have reviewed that news story, which accompanies numerous letters from trash haulers and other members of the public expressing their opinions about the proposed legislation. There is no indication the incident or the article was ever considered by the Legislature. Regardless, such articles are generally not considered part of a statute's legislative history. (*Tibbetts v. Van de Kamp* (1990) 222 Cal.App.3d 389, 395, fn. 5 [271 Cal.Rptr. 792].)

[8] The decisions relied on by Valley Vista do not alter our analysis. *City of Alhambra, supra,* 61 Cal.App.4th 136, concerned whether section 49520 applied to trash haulers who operated with a general business license as opposed to a specific trash hauling permit and was later legislatively overruled. *Rodeo Sanitary Dist. v. Board of Supervisors* (1999) 71 Cal.App.4th 1443 [84 Cal.Rptr.2d 601], concerned whether a county ordinance assuming control of waste disposal from local sanitation districts conflicted with the Act. Neither considered the issue before this court. Valley Vista also points to section 40059, subdivision (b)(2), which states that nothing in the Act modifies or abrogates in any manner any contract, license or permit to collect solid waste that was previously granted. We believe that the more particular provisions of section 49520, which specifically deal with the rights of existing trash haulers when an exclusive franchise is granted under the Act, govern over these general terms. (Code Civ. Proc., § 1859; *Garcia v. County of Sacramento* (2002) 103 Cal.App.4th 67, 77 [126 Cal.Rptr.2d 465].)

## DISPOSITION

For the reasons set forth above, the judgment is affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.