Filed 11/5/18 (unmodified opn. attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| IVORY EDUCATION INSTITUTE, etc. et al., | B282558 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC602584) |
| v. | ORDER MODIFYING OPINION |
| STATE OF CALIFORNIA etc. et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents, | |
| NATURAL RESOURCES DEFENSE COUNCIL, INC. et al., | |
| Intervenors and Respondents. | |

THE COURT:*

It is ordered that the opinion filed November 1, 2018, be modified as follows:

The last line of the first paragraph of the opinion shall be deleted and replaced with the following:

"We conclude that the statute is not facially vague and therefore affirm the judgment."

The opinion shall be corrected to indicate WILLHITE, Acting P.J. and COLLINS, J. as the two justices concurring in the opinion.

There is no change in judgment.

_____

*WILLHITE, Acting P.J.        MICON, J.**        COLLINS, J.

_____

**Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

Filed 11/1/18 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| IVORY EDUCATION INSTITUTE, | B282558 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC602584) |
| v. | |
| DEPARTMENT OF FISH AND WILDLIFE, | |
| Defendant and Respondent; | |
| NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., | |
| Interveners and Respondents. | |

Appeal from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge. Affirmed.

Rogers & Harris and Michael Harris for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Robert W. Byrne, Assistant Attorney General, Gary E. Tavetian and Carol Ann Zimmerman Boyd, Deputy Attorneys General for Defendant and Respondent.

Jennifer A. Sorenson and Katherine Desormeau for Natural Resources Defense Council, International Fund for Animal Welfare, and Wildlife Conservation Society; Brendan Cummings for Center for Biological Diversity; and Rebecca Cary for The Humane Society of the United States, Respondent-Interveners.

---

Plaintiff Ivory Education Institute appeals from the judgment entered in favor of defendant and respondent California Department of Fish and Wildlife in this action challenging as unconstitutionally vague on its face a recently enacted statute effectively banning the importation and sale of ivory and rhinoceros horn. We conclude that the statute is facially vague and therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

In 2015, the Legislature passed Assembly Bill 96, which took effect July 1, 2016 as Fish & Game Code section 2022, imposing tough new restrictions on the sale and importation of ivory and rhinoceros horn.[1] The Ivory Education Institute (the Institute) sued the California Department of Fish and Wildlife (the Department) to block implementation of the law, alleging that it was unconstitutional on a number of grounds, including vagueness, federal preemption, the takings clause, and the commerce clause.[2]

---

[1] We set forth the applicable portions of that new law as part of our Discussion, *post*.

[2] The Institute states that it is a nonprofit association dedicated to educating the public about the history and

2

In April 2016, the trial court allowed the Natural Resources Defense Council, the Center for Biological Diversity, the Humane Society of the United States, the International Fund for Animal Welfare, and the Wildlife Conservation Society to intervene as defendants.

In June 2016, the trial court determined that the Institute was limited to mounting a facial attack on the provision's constitutionality and directed the parties to prepare and file competing dispositive motions. The Institute filed a summary judgment motion, while the Department filed a motion for judgment on the pleadings. The trial court granted the Department's motion and denied the Institute's motion, and entered judgment for the Department and the intervenors.

On appeal, the Institute has expressly limited its challenge to the void-for-vagueness doctrine, thereby abandoning all other issues raised below.[3]

## DISCUSSION

1. *The History and Text of Fish and Game Code Section 2022*

Since 1970, Penal Code section 653o has prohibited the import and sale of the body parts of various dead animals,

---

appreciation of ivory objects, as well as advancing the interests of those who collect or otherwise possess ivory objects, particularly objects of historical and cultural importance.

[3] The Institute states in its opening appellate brief that although it "continues to contend that all of the grounds previously stated for the unconstitutionality of the Statute are meritorious, it wishes to focus this appeal on why its provisions are so vague as to render it unconstitutional on its face."

including elephants. (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 936–937 (*Viva! Internat. Voice for Animals*).) An uncodified provision of that section later exempted elephant ivory imported before June 1, 1977, and placed on defendants the burden of proving the importation date. (Stats. 1976, ch. 692, § 5, p. 1697; Stats. 2015, ch. 475 (A.B. 96), § 2.)

Concerned that difficulties in proving the date of importation acted as a loophole to the law, the Legislature in 2015 enacted Fish and Game Code section 2022 (section 2022). (Stats. 2015, c. 475 (A.B. 96), § 2; Assem. Com. on Appropriation Analysis, Rep. on Assem. Bill No. 96 (2015-2016 Reg. Sess.) March 25, 2015, pp. 4-5.) The Legislature found and declared:

"(a) There is worldwide concern regarding the plight of elephants and rhinoceroses, who are being poached at alarming rates—an average of 96 elephants per day are killed in Africa.

"(b) Illegal poaching and wildlife trafficking is the fourth largest transnational crime and ivory helps fund the military operations of notorious terrorist groups. Smuggling gangs move tons of tusks to markets thousands of miles away.

"(c) International, federal, and state laws are all being strengthened to protect these iconic species from cruelty and extinction. The states of New York and New Jersey recently enacted strong prohibitions on intra-state ivory and rhinoceros horn commerce and the federal government has proposed strengthened ivory trade and import regulations.

"(d) California has prohibited the ivory trade since 1977, but a loophole has rendered the law unenforceable—allowing illegal sales to flourish. San Francisco and Los Angeles have consistently ranked among the top trading markets for illegal ivory in the United States."

4

In order to address these concerns, section 2022 provides, in relevant part, that, with certain specified exceptions, "it is unlawful to purchase, sell, offer for sale, possess with intent to sell, or import with intent to sell ivory or rhinoceros horn." (§ 2022, subd. (b).)  Ivory is defined as "a tooth or tusk from a species of elephant, hippopotamus, mammoth, mastodon, walrus, warthog, whale or narwhal, or a piece thereof, whether raw ivory or worked ivory, and includes a product containing, or advertised as containing, ivory."  (§ 2022, subd. (a)(2).)  Rhinoceros horn is defined as "the horn, or a piece thereof, or a derivative such as powder, of a species of rhinoceros, and includes a product containing, or advertised as containing, rhinoceros horn." (§ 2022, subd. (a)(3).)

The three exceptions to section 2022 at issue here are:

"(2) An activity that is authorized by an exemption or permit under federal law or that is otherwise expressly authorized under federal law.

"(3) Ivory or rhinoceros horn that is part of a musical instrument, including, but not limited to, a string or wind instrument or piano, and that is less than 20 percent by volume of the instrument, if the owner or seller provides historical documentation demonstrating provenance and showing the item was manufactured no later than 1975.

"(4) Ivory or rhinoceros horn that is part of a bona fide antique and that is less than five percent by volume of the antique, if the antique status is established by the owner or seller of the antique with historical documentation demonstrating provenance and showing the antique is not less than 100 years old."  (§ 2022, subd. (c).)[4]

_____

[4] Other specified exemptions include state and federal law enforcement activities (§ 2022, subd. (c)(1)) and sale or possession

5

2. *The Void-For-Vagueness Doctrine*

A party making a facial challenge to a statute's constitutionality must meet "'exacting'" standards. (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1138 (*Gerawan Farming*).) Under the strictest test, the challenger must show that the statute inevitably poses a present total and fatal conflict with the constitution. Under the more lenient standard, we ask whether the statute is unconstitutional in the generality or great majority of cases. (*Ibid.*)

The void-for-vagueness doctrine is a component of the constitutional requirement of due process of law. (U.S. Const., 5th & 14th Amends.) The doctrine prevents the government "from enforcing a provision that 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.' [Citations.]" (*People v. Hall* (2017) 2 Cal.5th 494, 500 (*Hall*), quoting *Connally v. General Construction Co.* (1926) 269 U.S. 385, 391.)

Under the void-for-vagueness doctrine, a criminal statute must be definite enough to provide both a standard of conduct for those whose conduct falls within the statute's reach, and a standard for law enforcement and the ascertainment of guilt. (*People v. Morgan* (2007) 42 Cal.4th 593, 605 (*Morgan*).) There is a strong presumption that statutes must be upheld unless their unconstitutionality is clear, positive, and unmistakable. (*Ibid.*)

---

for educational or scientific purposes by bona fide educational and scientific institutions. (§ 2022, subd. (c)(5).)

Only a reasonable degree of certainty is required.  (*Hall, supra,* 2 Cal.5th at p. 503.)[5]

---

[5] In addition to holding that a criminal statute must provide a definite standard of conduct for the public, law enforcement, and the ascertainment of guilt, the *Morgan* court also said that a statute is not unconstitutional if it is vague in some of its applications, but must instead be vague in all of its applications.  (*Morgan, supra,* 42 Cal.4th at pp. 605–606.)  The genesis of this standard seems to lie in *Hoffman Estates v. Flipside, Hoffman Estates* (1982) 455 U.S. 489, 497, which was cited for that proposition in *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1201, and then cited in turn by *Morgan, supra,* at pages 605–606.

The Institute contends that the "vague in all its applications" standard is no longer good law in light of *Johnson v. United States* (2015) 576 U.S. ___, 135 S.Ct. 2551 (*Johnson*). *Johnson* was the fourth time the Supreme Court considered the "residual clause" of the Armed Career Criminal Act (18 U.S.C. section 924(e)(2)(B) (ACCA)), which imposes increased penalties for those with three or more violent felony convictions that presented a serious potential risk of physical injury to others.

Previous decisions had interpreted the residual clause based on the elements of the underlying offense, not on how a particular defendant might have committed that offense.  Based on its repeated attempts and failures to craft an objective standard for the residual clause, the *Johnson* court held that the statute was unconstitutionally vague.  As part of its holding, the court appears to have rejected the "vague in all its applications" approach.  Even though it had used that formulation in the past, Justice Scalia wrote that the "supposed requirement of vagueness in all applications is not a requirement at all, but a tautology: If we hold a statute to be vague, it is vague in all its applications (and never mind the reality)."  (*Johnson, supra,* 135 S.Ct. at p. 2561.)

7

Statutory language is not impermissibly vague if its meaning can be fairly ascertained by reference to other sources,

---

The Institute contends that this new formulation means that a statute is unconstitutionally vague so long as it is vague in *any* of its applications, and urges us to adopt it. The Department distinguishes *Johnson* on its facts and urges us not to follow it.

That part of *Johnson* concerning the "vague in all applications" rule does not, by itself, proscribe a standard of review in void-for-vagueness cases. We believe that standard is set forth early on in *Johnson,* where the court cites *Kolender v. Lawson* (1983) 461 U.S. 352, 357–358 for the proposition that a criminal law is unconstitutionally vague when "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." (*Johnson, supra,* 135 S.Ct. at p. 2556.) The Supreme Court cited *Johnson* for that proposition one year later, without any mention of the "all its applications" rule. (*Welch v. United States* (2016) ___ U.S. ___, 136 S.Ct. 1237, 1261–1262.) We believe this iteration best embodies the view of the United States Supreme Court.

It is unclear whether, setting aside the "vague in all its applications" rule, that the federal rule differs in any meaningful way from the remaining portion of the California rule. (*Morgan, supra,* 42 Cal.4th at p. 605 [statute must be definite enough to provide standard of conduct for those within its reach, and a standard for law enforcement and ascertainment of guilt].) We need not resolve that issue now. Instead, we assume, without deciding the issue, that the "vague in all its applications" standard does not apply. We instead conclude, as set forth *post*, that in the context of this facial challenge, section 2022 gives ordinary people fair notice of the conduct it punishes, is not so standardless that it invites arbitrary enforcement (*Kolender, supra,* 461 U.S. at pp. 357–358), and provides a sufficiently definite standard of conduct for the public, law enforcement, and the ascertainment of guilt. (*Morgan, supra,* 42 Cal.4th at p. 605.)

8

such as dictionary definitions, similar statutes, the common law, or judicial decisions, or if the words have a common and generally accepted meaning.  (*Morgan, supra,* 42 Cal.4th at p. 607; *In re J.W.* (2015) 236 Cal.App.4th 663, 671.)  "In reviewing a facial challenge to a statute on vagueness grounds, we 'construe the statute in favor of its validity and give it a reasonable and practical construction in accordance with the probable intent of the Legislature; a statute will not be declared void for vagueness or uncertainty if any reasonable and practical construction can be given its language.'"  (*People ex rel. Brown v. iMergent, Inc.* (2009) 170 Cal.App.4th 333, 339–340, quoting *Schweitzer v. Westminster Investment* (2007) 157 Cal.App.4th 1195, 1206.)

Finally, a facial void-for-vagueness challenge considers only the text of the measure itself, "'not its application to the particular circumstances of an individual.'"  (*Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 39, quoting *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  The plaintiff cannot prevail "'by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute.'"  (*Ibid.* quoting *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180.)  A statute is not void just because "'there may be difficulty in determining whether some marginal or hypothetical act is covered by its language." [Citation.]'"  (*Morgan, supra,* 42 Cal.4th at p. 606, quoting *People v. Ervin* (1997) 53 Cal.App.4th 1323, 1329.)

3. *Principles of Statutory Construction*

The fundamental rule of statutory construction is to ascertain the intent of the legislative body in order to effectuate the purpose of the law. In doing so, we first look to the words of the enactment and try to give effect to the usual, ordinary import

of the language, at the same time not rendering any language mere surplusage.  (*Valley Vista Services, Inc. v. City of Monterey Park* (2004) 118 Cal.App.4th 881, 888 (*Valley Vista Services*).)

The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. The statute must be given a reasonable and common sense interpretation consistent with the legislative body's apparent purpose and intention.  The interpretation should be practical, not technical, and should result in wise policy rather than mischief or absurdity.  If the language of a statute is clear, we should not add to or alter it to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Valley Vista Services, supra,* 118 Cal.App.4th at pp. 888–889.)

Statutes should be interpreted with reference to the whole system of law of which they are a part, and sections relating to the same subject must be read together and harmonized.  When construing a statute, we may consider its legislative history, including committee and bill reports and other legislative records.  (*Valley Vista Services, supra,* 118 Cal.App.4th at p. 889.)

4. *Section 2022 Is Not Unconstitutionally Vague*

The Institute contends that section 2022 is unconstitutionally vague for two reasons:  (1) while it allows for the sale or import of ivory insofar as it is allowed by federal law, differences in what federal law allows make it nearly impossible to tell what would qualify for the exemption provided by section 2022, subdivision (c)(2); and (2) there are no guidelines by which to determine the permissible volume of ivory in either musical instruments (§ 2022, subd. (c)(3)) or antiques (§ 2022, subd. (c)(4).

4.1  The Federal Law Exemption

The federal Endangered Species Act was Congress's means of implementing the United Nations Convention on International

10

Trade in Endangered Species of Wild Fauna and Flora (CITES). (16 U.S.C. § 1531(4)(F).) Pursuant to the Endangered Species Act, the United States Fish and Wildlife Service has implemented a variety of regulations governing the treatment, import, export, and sale of endangered and threatened species or their byproducts.

Most relevant here is a regulation promulgated under the authority of the Endangered Species Act that governs numerous mammals, including African elephants. (50 C.F.R. § 17.40.) Under that rule, the interstate and foreign commerce of ivory from African elephants is prohibited, subject to certain exceptions. (50 C.F.R. § 17.40(e)(3).) These include handcrafted or manufactured items containing de minimis amounts of ivory that do not weigh more than 200 grams or constitute more than 50 percent of the value of the item. (50 C.F.R. § 17.40(e)(3)(iii), (v), (vi)) Musical instruments containing ivory may be imported or exported without a special permit if, among other things, the instrument contains a CITES certificate. (50 C.F.R. § 17.40(e)(5)(i)(B).) Antiques containing or consisting of ivory are not subject to the provisions of the rule and do not require a special permit. (50 C.F.R. § 17.40(e)(9).)

These rules and others conflict with section 2022, the Institute contends, making the provision infirm because those seeking to comply with the statute cannot: (1) determine with certainty whether a federal law exempts, permits, or authorizes their conduct; or (2) determine whether more lenient provisions of federal law will control.

4.2 Existing Federal Law Clarifies Section 2022

The first contention is resolved by application of the rule that a statute is not vague if its meaning can be determined by looking at other definable sources of information, including other statutes. (*American Civil Liberties Union v. Board of Education*

11

(1963) 59 Cal.2d 203, 218 (*American Civil Liberties Union*); *Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 139 (*Personal Watercraft Coalition*).)

The plaintiff in *American Civil Liberties Union, supra,* 59 Cal.2d 203 sued the Los Angeles Board of Education, challenging a rule requiring applicants for permits to use school property for their activities to attest that they would not use the property for any illegal act. Plaintiff challenged the rule's constitutionality on several grounds, including void-for-vagueness. In reversing the judgment for plaintiff, the Supreme Court held that the rule was not unconstitutionally vague because, among other things, it simply incorporated by reference the definitions of crimes adopted by higher legislative authorities. (*Id.* at p. 218.) The court held that a complete definition of what was prohibited by law could be obtained by reference to the individual statutes, concluding that "a simple reference to all such acts in a statute which is not criminal in nature, is not vague." (*Ibid.*)

This rule was applied more recently in *Personal Watercraft Coalition, supra,* 100 Cal.App.4th 129. The plaintiffs there sued to block a Marin County ordinance that prohibited the use of personal watercraft (primarily jet skis) on all waters within the County's territorial jurisdiction, contending that the ordinance was unconstitutionally vague. The basis for this contention was the ordinance's disclaimer of the intent to intrude on the power of any regulatory authority having "exclusive jurisdiction" over any portions of Marin's shoreline. (*Id.* at pp. 134, 136.)

Plaintiffs obtained judgment in the trial court on this ground because the ordinance did not mention unincorporated areas that would be subject to County control or provide any geographical reference to understand where those areas would begin and end. (*Personal Watercraft Coalition, supra,* 100

12

Cal.App.4th at p. 140.)  Instead, the only guideline provided as to where the ordinance applied was the phrase "as defined by their natural landmarks," which did not include any navigational aids or other boundary markings by which to identify unincorporated areas.  The ordinance also failed to reference buoys, signs, or general boundary information.  (*Ibid.*)

Characterizing the dispute as a facial challenge to the ordinance, the Court of Appeal reversed because:  (1) despite the absence of express language limiting the reach of the ordinance to unincorporated areas, the County's intent to do so was implicit; and (2) the absence of specific boundary identification information was inconsequential given the availability of that information from various public sources.  (*Personal Watercraft Coalition, supra,* 100 Cal.App.4th at pp. 140–143.)

The *Personal Watercraft Coalition* court began by noting "It should be obvious from the extent and variety of sources that may be consulted in determining the meaning and content of a statute that vagueness is not resolved by a simple perusal of statutory text.  A person wondering whether a contemplated course of conduct is within a statutory prohibition is under a duty of inquiry to determine whether the latter will reach the former. . . . That duty does not end with the four corners of the statute, but extends to consulting 'other definable sources' that may dispel doubt and uncertainty.  Difficulty in attempting to ascertain statutory meaning will neither excuse the failure to make the attempt, nor will it nullify the statute." (*Personal Watercraft Coalition, supra,* 100 Cal.App.4th at pp. 139–140, citing *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484; *County of Tulare v. City of Dinuba* (1922) 188 Cal. 664, 677–678.)

Although the Marin shoreline was a "checkerboard" of county, state, and federal jurisdictions, there was a County map

13

that delineated some of the jurisdictional boundaries, the County's boundary landmarks were set out by statute, and maps were on file with the State Lands Commission that would show where any city had incorporated water frontage on the shoreline. (*Personal Watercraft Coalition, supra,* 100 Cal.App.4th at pp. 140–142.) Based on the availability of those resources, the court held the ordinance was not unconstitutionally vague. (*Id.* at pp. 140–143.)

We recognize that the *Personal Watercraft Coalition* court was applying the pre-*Johnson* standard that a statute is not vague unless it is impermissibly vague in all its applications. (*Personal Watercraft Coalition, supra,* 100 Cal.App.4th 129 (See fn. 5, *ante*.) Even so, it is particularly useful in both analyzing how existing federal law clarifies the meaning of section 2022 and explaining the Institute's duty of inquiry concerning those laws.

If jet skiers in Marin County were under a duty to locate and examine statutes and county and state maps to determine the boundaries of the personal watercraft ordinance in the *Personal Watercraft Coalition* case, then it is no reach to conclude that those wishing to comply with section 2022 are under a similar duty with regard to any federal laws, exemptions, or permits that coincide with the scope of that provision. That those laws exist means they can be found, and the duty to find them rests with those subject to section 2022. (See *Hall, supra,* 2 Cal.5th at p. 502 ["The mere fact that defendant is charged with knowledge of all law that could apply to his situation does not render the condition unconstitutionally vague"].)

Section 2022 has a single purpose—to prevent the sale or importation of ivory and rhinoceros horn. Both of those terms are defined. The Institute has "not demonstrated that attempts to give substance and meaning" to the three disputed exceptions "would be fruitless." (*Personal Watercraft Coalition, supra,* 100

14

Cal.App.4th at p. 143.)  Because federal statutes and other provisions that might overlap with section 2022 can be ascertained, the exception for activities authorized by the federal government is not vague on its face.

        4.3  <u>The Institute Improperly Raises Federal Preemption</u>

The Institute also contends that section 2022 is vague because it is hard to tell whether the "more lenient" federal rules will control, given the exception for activities that are exempted, permitted, or authorized by federal law.  (§ 2022, subd. (c)(2).)  On its face, section 2022 states that it does not apply to conduct approved under federal law.  Thus, there is no lack of clarity concerning the effect of those laws.

At bottom this contention calls on us to examine relevant federal laws, permits, and exemptions, and determine whether they are in conflict and, if so, whether they might take precedence over section 2022.  As such, the Institute strays from the path of void-for-vagueness analysis and veers head-on into the issue of federal preemption, an issue that it has expressly waived on appeal.[6]  We therefore decline to reach this issue.

---

[6] For instance, the Institute cites to the Supremacy Clause of the United States Constitution (U.S. Const., art. VI, cl. 2) for the proposition that federal law prevails in case of a conflict with state law.  It also cites to the provision of the Endangered Species Act that establishes the extent to which that act preempts state law.  (16 U.S.C. § 1535(f).)  That section voids any state law that coincides with the Endangered Species Act to the extent it permits what the act prohibits, or prohibits what the act has authorized.  However, the federal statute has been interpreted to allow states to enact more restrictive legislation as to species not covered by the Endangered Species Act.  (*H.J. Justin & Sons, Inc. v. Deukmejian* (9th Cir. 1983) 702 F.2d 758, 759–760; *Man Hing*

15

Even if we were inclined to reach the issue, it would also be waived because the Institute has directed us to only a handful of seemingly applicable federal statutes and regulations, and has failed to cite to relevant case authority or offer any analysis on the preemption issue. (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 360.)[7]

---

*Ivory & Imports, Inc. v. Deukmejian* (9th Cir. 1983) 702 F.2d 760, 763.)

As the Institute points out, several species of animal covered by section 2022 are not covered by the Endangered Species Act. These include mammoths, mastodons, and warthogs. (§ 2022, subd. (a)(2).) We note this only to show the extent to which portions of the Institute's appellate arguments implicate the federal preemption issue, as well as to illustrate the complexities of that issue.

[7] Federal preemption is not the only expressly waived issue that the Institute attempts to raise in its appellate briefs. In appellate briefing that recounts the history of ivory, with references that run from the Bible to Emily Post, the Institute argues that: the law is counter-productive because elephant populations and their viability differ from country to country within Africa; ivory bans push prices higher, thereby increasing the incentive to poach ivory-bearing animals; the basis of the law is suspect because some studies show that fewer elephants die from poaching each day than the figure of 96 relied on by the Legislature; and the law is simply another manifestation of colonial racism by imposing the values of "California do-gooders" on sovereign African nations.

Setting aside that none of these assertions is supported by citation to the record or any supporting authority, we make the following observations. First, a state may constitutionally conserve wildlife elsewhere by refusing to accept local complicity

16

4.4 The Antique And Musical Instrument Volume Exceptions

The Institute also challenges the exceptions for musical instruments containing less than 20 percent ivory by volume (§ 2022, subd. (c)(3)) and for antiques containing less than five percent ivory by volume (§ 2022, subd. (c)(4)). However, its vagueness challenge is primarily hypothetical.

After stating generally that the law does not explain what less than 20 percent or five percent by volume means, the Institute posits a number of hypothetical scenarios: does the bow of a stringed instrument count as a separate object?; why would the Legislature bar an ivory figure attached to a small antique where it constitutes five percent or more of that object, but permit an exception if the same piece were affixed to a larger object?; how could the owner of an Old Master's painting, many of which used black ivory in the pigments,[8] know if the artwork fell within the volume exception when there is no way to measure the volume of the ivory?; and how could the heirs of General George S. Patton know whether they were complying with the law if they were to sell his famous ivory handled revolvers without knowing

_____

in its destruction. (*Viva! Internat. Voice for Animals, supra,* 41 Cal.4th at pp. 937–938.) Second, it strikes us as somewhat absurd to compare section 2022 with the historical heart of darkness that is the ivory trade.

[8] The Institute makes this assertion without citation to any factual support in the record.

the age of the ivory or determining whether the handles exceeded the five percent minimum.[9]

However, such hypothetical concerns have no place in a void-for-vagueness facial challenge. (*Zuckerman v. State Board of Chiropractic Examiners* (2002) 29 Cal.4th 32, 39.) Instead, any uncertainties that arise in enforcing section 2022 should be addressed later "in a specific and concrete instance." (*Personal Watercraft Coalition, supra,* 100 Cal.App.4th at p. 143.)

To the extent the Institute contends that the terminology of percentage by volume is vague on its face, it has supplied the answer in its opening appellate brief: volume is normally defined as the capacity of an object based on its shape and size. This accords with the standard dictionary definition of volume. (See, e.g., Cambridge Dictionary of the English Language <https://dictionary.cambridge.org/dictionary/english/volume> [volume is defined as "an amount of space having length, height, and width"].) Because the musical instruments and antiques exceptions concern physical, tangible objects that occupy a verifiable amount of three-dimensional space, the percent of any such objects occupied by ivory can be readily determined. As a result, the Institute's facial challenge to these exceptions also fails.

---

[9]At last report, those pistols still resided in the Patton Gallery of the West Point Museum. (<https://www.foxnews.com/science/colt-45-revolver-owned-by-patton-fetches-75g-at-auction>)

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their appellate costs.

CERTIFIED FOR PUBLICATION


MICON, J.*

We concur:


MANELLA, P. J.                    WILLHITE, J.


*Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19